**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Russell E. Brandt, et al., | No. CV-14-00074-PHX-NVW |
| Plaintiffs, | **ORDER** |
| v. | |
| Bighorn Investments LLC, et al., | |
| Defendants. | |

Before the Court are Plaintiffs' Motion to Enforce Arbitration Provision (Doc. 45) and Defendants' Response (Doc. 46).

Plaintiffs and Defendants, who together comprise the membership of Mystic Moon Ranchettes, LLC, agreed in Mystic Moon's operating agreement ("Operating Agreement") that "[a]ny dispute or discomfort arising out of or in connection with this agreement, including disputes between or among the members, shall be settled by the negotiation, mediation and arbitration provisions of that certain LawForms Integrity Agreement (Uniform Agreement Establishing Procedures for Settling Disputes) entered into by the parties prior to or concurrently with the adoption of this agreement." Doc. 45-1 at 19. The parties now find themselves embroiled in a bitter dispute, dating back to at least 2004, regarding the development and sale of a 40-acre parcel of land outside Florence, Arizona. Unfortunately, the parties cannot locate the LawForms Integrity Agreement referenced in the Operating Agreement. Plaintiffs previously objected to submitting the dispute to arbitration, but their Motion now withdraws that objection and identifies five conditions that they request the Court impose if it orders arbitration: that

(1) arbitration is conducted by a single arbitrator, (2) the decision of the arbitrator is binding upon the parties to the arbitration, (3) Defendants will pay half of the arbitrator's total fees and costs, (4) arbitration will be conducted pursuant to Arizona's Revised Uniform Arbitration Act, and (5) arbitration will be completed before October 28, 2014. Doc. 45 at 1-2. Defendants are also willing to proceed with arbitration, but they object to conditions two, three, four and five; in addition, they "agree to a single arbitrator so long as the arbitrator is appointed by the Court under the rules of the [Federal Arbitration Act]." Doc. 46 at 6-7.

"A written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If the agreement to arbitrate provides "a method of naming or appointing an arbitrator" but "for any … reason there [is] a lapse in the naming of an arbitrator," then "upon the application of either party to the controversy the court shall designate and appoint an arbitrator … who shall act under the said agreement with the same force and effect as if he … had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator." *Id.* § 5. Although there do not appear to be any cases directly on point, the Ninth Circuit has fallen back on § 5 in cases in which the organization ostensibly designated as the arbitrator of choice refused to take jurisdiction over the dispute. *Reddam v. KPMG LLP*, 457 F.3d 1054, 1057 (9th Cir. 2006), *abrogated on other grounds as recognized by Atl. Nat'l Trust LLC v. Mt. Hawley Ins. Co.*, 621 F.3d 931 (9th Cir. 2010).

When the chosen arbitrator is unavailable, the district court must answer two questions: "First, did the agreement amount to a choice of forum clause? Second, if it did, did the refusal of that forum to conduct the arbitration mean that no arbitration at all

could go forward--that is, was the choice of forum clause integral?" *Id.* at 1059. "When a court asks whether a choice of forum is integral, it asks whether the whole arbitration agreement becomes unenforceable if the chosen arbitrator cannot or will not act." *Id.* at 1060. "Only if the choice of forum is an integral part of the agreement to arbitrate, rather than an 'ancillary logistical concern' will the failure of the chosen forum preclude arbitration." *Id.* (internal quotation marks omitted) (citing *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000)). In answering these questions of interpretation, it is unnecessary to decide whether state or federal contract law should apply, since "[w]hichever body of law is applied, it is [the court's] task to determine and effectuate the intent of the parties and … that means [the court] must do so by reference to the terms of the agreement itself." *See id.* at 1059.

Here, given the vague wording of the Operating Agreement and the unavailability of the LawForms Integrity Agreement, it is difficult to determine whether the arbitration provision constituted a choice of forum clause. But deciding that question is unnecessary, because even if the provision was a choice of forum clause, it was not "integral" to the arbitration agreement. *See id.* at 1060 (passing over first question because second question was dispositive). "There is no evidence that naming of [the supposedly designated arbitrator] was so central to the arbitration agreement that the unavailability of that arbitrator brought the agreement to an end." *Id.* at 1061 (citations omitted). Indeed, the Operating Agreement expressly provides, in the paragraph immediately preceding the arbitration agreement, that if "[a]ny provision of this agreement is held to be invalid or unenforceable, all the remaining provisions shall nevertheless continue in full force and effect." Doc. 45-1 at 19. The unavailability of the precise arbitration mechanism specified in the Operating Agreement therefore does not nullify the parties' consent to arbitrate. *See Selby v. Deutsche Bank Trust Co. Ams.*, No. 12cv01562 AJB (BGS), 2013 U.S. Dist. LEXIS 46101, at *38-39 (S.D. Cal. Mar. 28, 2013) (relying in part on severance clause to find "the arbitration provisions survive [the designated arbitrator's] unavailability").

1    Construing Plaintiffs' Motion and Defendants' Response as an "application" by the parties, 9 U.S.C. § 5, the Court has the authority and obligation to appoint an arbitrator. Because the parties' dispute relates to the sale of land, the matter is one of great urgency that requires quick resolution.

IT IS THEREFORE ORDERED that retired Maricopa County Superior Court Judge Barry C. Schneider shall be appointed to arbitrate the dispute between Plaintiffs and Defendants, unless by October 22, 2014, the parties file with the Court a stipulation agreeing to submit the dispute to a different arbitrator.

IT IS FURTHER ORDERED that the terms of process for the arbitration shall be decided by the arbitrator, whether Judge Schneider or the parties' chosen arbitrator, unless by October 22, 2014, the parties file with the Court a stipulation agreeing to different terms.

IT IS FURTHER ORDERED that the parties shall share the fees and expenses of arbitration equally, with each party to pay its half of costs by November 1, 2014, in a manner determined by the arbitrator, subject to the arbitrator's authority to assess fees at the completion of arbitration. If any party does not pay its half of the costs by November 1, 2014, that party's pleadings shall be stricken and a dismissal or default judgment entered in favor of the opposing party.

IT IS FURTHER ORDERED that the arbitrator is requested to process this matter with great speed, but the schedule for arbitration shall be set by the arbitrator.

Dated this 8th day of October, 2014.

_____
Neil V. Wake
United States District Judge